Receipt number AUSFCC-8222055

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SHELL USA, INC. F/K/A SHELL OIL COMPANY, ATLANTIC RICHFIELD COMPANY, TEXACO INC., AND UNION OIL COMPANY OF CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 22-1431 C |

## COMPLAINT

1. Plaintiffs Shell USA, Inc. f/k/a Shell Oil Company ("Shell"), Atlantic Richfield Company ("Atlantic Richfield"), Texaco Inc. ("Texaco"), and Union Oil Company of California ("Union") (collectively referred to as the "Oil Companies") bring this action for damages against the United States for breaches of contract under the Contract Settlement Act of 1944 ("CSA") and the Tucker Act.

2. This is not the first time that the events giving rise to this action have come before this Court. During World War II, the United States entered into contracts with the Oil Companies or their predecessors-in-interest to produce aviation gasoline ("avgas") for the war effort (the "Avgas Contracts"), and the production of avgas generated sulfuric acid waste that the Oil Companies deposited at what is now called the McColl Superfund Site in Fullerton, California (the "McColl Site" or the "Site"). In previous litigation, the United States Court of Appeals for the Federal Circuit held that the United States had breached an indemnification provision in the Avgas Contracts by failing to reimburse the Oil Companies for environmental remediation costs that they were required to pay at the McColl Site under the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. §§ 9601 *et seq. See Shell Oil Co. v. United States*, 751 F.3d 1282, 1296 (Fed. Cir. 2014) ("*Shell I*"). Subsequently, the Federal Circuit affirmed a damages award of nearly $100 million in favor of the Oil Companies, which encompassed all costs the Oil Companies had incurred at the McColl Site through November 30, 2015. *See Shell Oil Co. v. United States*, 896 F.3d 1299, 1316 (Fed. Cir. 2018) ("*Shell II*"). Thus, after almost thirty years of litigation over the McColl Site and over a decade of litigation in this Court, the United States was forced to honor its contractual commitment and indemnify the Oil Companies.

3.  Pursuant to the 2014 and 2018 Federal Circuit decisions holding that the Avgas Contracts require the United States to indemnify the Oil Companies for 100 percent of the cleanup costs that they have incurred or will incur at the McColl Site, plus 2.5 percent simple interest under the CSA, the Oil Companies thereafter sought to recover the costs and interest they incurred after November 30, 2015. Once again, the Government refused to pay these costs, and the Oil Companies were forced to bring another suit in this Court. Once again, this Court concluded that the Government was liable under the Avgas Contracts for the continuing cleanup costs and that the Oil Companies were entitled to indemnification for the remediation costs incurred at the McColl Site from November 30, 2015 through September 30, 2019, which amounted to approximately $1.6 million, as well as to interest on the costs accruing through the date of final payment. *Shell Oil Co. v. United States*, 148 Fed. Cl. 781, 796 (2020) ("*CFC 2020 Decision*"). And once again, the Federal Circuit affirmed this Court's judgment. *Shell Oil Co. v. United States*, 7 F.4th 1165 (Fed. Cir. 2021) ("*Shell III*").

4.  The Oil Companies have continued to incur remediation costs at the McColl Site and on June 21, 2022, demanded reimbursement for the costs and interest that they had incurred

from October 1, 2019 through June 15, 2022. But even though the Federal Circuit has definitively—and repeatedly—held that the United States is liable for 100 percent of those costs and noted that it hoped its most recent decision would "put an end to the government's continued resistance to making payments [the court] ha[s] found it is obligated to make," *id.* at 1167, the Government has again refused to meet its contractual indemnification obligations. The Oil Companies therefore bring this action to recover post-September 30, 2019 damages that they have incurred as a result of the Government's ongoing breaches of contract and defiance of the Federal Circuit's previous holdings concerning the United States' liability in this matter.

## JURISDICTION

5. This Court has jurisdiction over this matter pursuant to the Contract Settlement Act of 1944, 41 U.S.C. § 113(b) (2010) (repealed 2011),[1] and the Tucker Act, 28 U.S.C. § 1491(a).

## THE PARTIES

6. Shell is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

7. Atlantic Richfield is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

---

[1] "In 2011, the CSA was [partially] repealed and replaced by An Act To Enact Certain Laws Relating To Public Contracts, Pub. L. 111–350, 124 Stat. 3677. The 2011 Act contained a savings clause providing that, '[t]he laws . . . are repealed except for *rights and duties that matured,* penalties that were incurred, and proceedings that were begun before the date of enactment of this Act.' Pub. L. No. 111–350, § 7(b), 124 Stat. 3677, 3855 (2011) (emphasis added). Consequently, . . . the Oil Companies['] right to be reimbursed for environmental remediation costs under the Avgas Contracts matured prior to 2011," and "the Oil Companies may still recover for interest on the environmental remediation costs they have incurred." *Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 39 n.42 (2017), *aff'd*, 896 F.3d 1299 (Fed. Cir. 2018). Accordingly, all references herein to the CSA are from the 2010 edition of the United States Code.

8. Texaco is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in San Ramon, California.

9. Union is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Ramon, California.

10. The United States of America is the defendant.

## FACTUAL ALLEGATIONS

### Background

11. In the aftermath of the attack on Pearl Harbor on December 7, 1941, aviation gasoline became "the most critically needed refinery product" and "was essential to the United States' war effort." *Shell I*, 751 F.3d at 1285. Accordingly, "the Government recognized the need to quickly mobilize avgas production." *Id.* at 1286. To accomplish that objective, the United States, via the Defense Supplies Corporation ("DSC"), entered into contracts with the Oil Companies or their predecessors-in-interest to produce avgas.

12. The Avgas Contracts listed below are the bases for this action and are identical in all relevant respects:

   a. On April 10, 1942, Shell and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas.

   b. On May 1, 1943, Shell and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas.

   c. On December 31, 1942, Union and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas.

   d. On May 1, 1943, Union and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas.

  e. On February 3, 1942, Richfield Oil Corporation, a predecessor-in-interest to Atlantic Richfield, and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas.

  f. On February 20, 1943, Richfield Oil Corporation, a predecessor-in-interest to Atlantic Richfield, and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas.

  g. On January 17, 1942, The Texas Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas.

  h. On February 8, 1943, The Texas Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas.

13. The Avgas Contracts each included an indemnification provision that provided as follows:

> <u>Buyer shall pay[,] in addition to the prices as established in [earlier provisions of the contract], any new or additional</u> taxes, fees, or <u>charges</u>, other than income, excess profits, or corporate franchise taxes, <u>which Seller may be required by any</u> municipal, state, or <u>federal law</u> in the United States or any foreign country <u>to</u> collect or <u>pay by reason of the production, manufacture, sale or delivery of the commodities delivered hereunder</u>.

(emphases added). Avgas was the "commodit[y] delivered" under the Avgas Contracts.

14. "The Oil Companies held up their end of the bargain: avgas production increased over twelve-fold from approximately 40,000 barrels per day in December 1941 to 514,000 barrels per day in 1945, and was crucial to Allied success in the war." *Shell I*, 751 F.3d at 1287.

15. The production of avgas during World War II required the use of sulfuric acid both as a catalyst and as a means of treating or purifying avgas components. This use of sulfuric acid necessarily resulted in the generation of sulfuric acid waste. *Shell II*, 896 F.3d at 1309–10. During World War II, the Oil Companies deposited some of this acid waste in twelve pits at the McColl Site.

16. The United States terminated the Avgas Contracts at the end of World War II. *Shell I*, 751 F.3d at 1288.

**The Previous Litigation Over This Matter**

17. In 1991, the United States and California sued the Oil Companies under CERCLA, alleging that they were responsible for the release of hazardous substances at the McColl Site. The Oil Companies counterclaimed for, *inter alia*, breach of contract, arguing that the United States was responsible for the cleanup costs at the McColl Site pursuant to the indemnification provision of the Avgas Contracts. The district court held that both the Oil Companies and the United States were liable as "arrangers" under CERCLA, *see United States v. Shell Oil Co.*, 294 F.3d 1045, 1048 (9th Cir. 2002), and, after a trial, it also held that the United States was responsible for 100 percent of the costs of cleaning up the waste at the McColl Site, *see United States v. Shell Oil Co.*, 13 F. Supp. 2d 1018, 1019–20, 1030 (C.D. Cal. 1998).

18. The United States Court of Appeals for the Ninth Circuit affirmed the district court's conclusion that the United States was liable for 100 percent of the cleanup costs of the benzol waste deposited at the Site (which was about 5.5 percent of the waste), but it reversed the holding that the United States was liable under CERCLA as an "arranger" for the cost of cleaning up the non-benzol sulfuric acid waste at the Site. *See Shell Oil Co.*, 294 F.3d at 1048–49. In accordance with this ruling, the Oil Companies have borne the bulk of the cost of cleaning up the acid waste since 1994.

19. The district court on remand transferred the Oil Companies' breach-of-contract counterclaim to this Court, which had jurisdiction over the matter. The Oil Companies thereafter voluntarily dismissed their counterclaim without prejudice so that they could submit a demand for a decision and written findings to the General Services Administration ("GSA"), the successor-in-

interest to the contracting agency, under the Contract Settlement Act. The GSA issued a decision on the Oil Companies' initial demand on February 15, 2006, rejecting the Oil Companies' demand for indemnification.

20. The Oil Companies thereafter filed a complaint in this Court for breach of contract. This Court granted summary judgment to the Oil Companies, holding that the United States was liable for 100 percent of the cleanup costs at the McColl Site. *See Shell Oil Co. v. United States*, 86 Fed. Cl. 470 (2009); *Shell Oil Co. v. United States*, 80 Fed. Cl. 411, 420 (2008). The United States Court of Appeals for the Federal Circuit later vacated that judgment because the presiding judge had a previously unknown financial conflict of interest stemming from his wife's ownership of a small number of shares of the stock of the parent company of two of the Oil Companies. *See Shell Oil Co. v. United States*, 672 F.3d 1283, 1289–94 (Fed. Cir. 2012).

21. The case was reassigned on remand, and the Court granted summary judgment to the United States on liability. *See Shell Oil Co. v. United States*, 108 Fed. Cl. 422, 425–26, 448 (2013). The Federal Circuit reversed, holding that "[t]he plain language of the new or additional charges provision . . . requires the Government to indemnify the Oil Companies for CERCLA costs incurred 'by reason of' the avgas contracts." *Shell I*, 751 F.3d at 1293. The Federal Circuit remanded "for the Court of Federal Claims to determine how much acid waste at the McColl site was [generated] 'by reason of' the avgas contracts." *Id.* at 1303.

22. On remand, this Court held a trial on damages in early 2016, in accordance with the Federal Circuit's mandate. Based on the evidence presented at trial, this Court found that "*all* of the acid waste disposed of at the McColl Site was [generated] 'by reason of' the Avgas Contracts" and awarded the Oil Companies $99,509,847.32 in damages. *Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 42 (2017) (emphasis added) (duplicate words omitted), *aff'd*, 896 F.3d 1299

(Fed. Cir. 2018). This damage award covered 100 percent of the costs that the Oil Companies had incurred at the McColl Site through November 30, 2015, plus 2.5 percent simple interest on those costs that had accrued up to that point in time under Section 6(f) of the CSA. *See id*. at 83–87.

23.     On July 18, 2018, the Federal Circuit unanimously affirmed this Court's judgment. *Shell II*, 896 F.3d at 1314 ("[W]e conclude the Court of Federal Claims did not err in its award of damages."). The United States chose not to seek rehearing or rehearing en banc, nor did it petition the United States Supreme Court for a writ of certiorari. The judgment in favor of the Oil Companies therefore became final, and the United States reimbursed the indemnified costs it owed the Oil Companies on April 1, 2019, in accordance with the judgment.

24.     On July 29, 2019, pursuant to the 2014 and 2018 decisions of the Federal Circuit holding that the Avgas Contracts require the United States to indemnify the Oil Companies for 100 percent of the cleanup costs that they have incurred or will incur at the McColl Site, plus 2.5 simple interest under the CSA, the Oil Companies sent a letter to the GSA demanding "reimbursement for costs that the Oil Companies have been required to pay—and that they reasonably expect to be required to pay in the future—pursuant to [CERCLA], in connection with the McColl Superfund Site." The Oil Companies received no response from the GSA.

25.     On November 22, 2019, the Oil Companies filed a complaint in this Court seeking to recover the costs and interest they incurred after November 30, 2015. *Shell III*, 7 F.4th at 1169. The Oil Companies moved for summary judgment, and the Government filed a response and motion to dismiss. On June 29, 2020, this Court granted both motions in part and denied them in part. As relevant here, this Court concluded that the Government was liable under the Avgas Contracts for the continuing cleanup costs and that the Oil Companies were "entitled to indemnification for remediation costs incurred at the McColl site since November 30, 2015

through September 30, 2019," which amounted to approximately $1.6 million, as well as to "interest on such costs, accruing through the date of final payment." *CFC 2020 Decision*, 148 Fed. Cl. at 796.

26. The Government appealed, arguing that "(1) res judicata bars the Oil Companies' claims for damages; and (2) the Claims Court erred in finding that it had jurisdiction over the Oil Companies' claims under the [CSA] and, thus, erred in awarding interest under the CSA." *Shell III*, 7 F.4th at 1167. The Federal Circuit rejected these arguments and affirmed this Court's decision. *Id.* The Federal Circuit noted that, in rendering its decision, it "hope[d] to put an end to the government's continued resistance to making payments [the court] ha[s] found it is obligated to make." *Id.* The United States chose not to seek rehearing or rehearing en banc, nor did it petition the Supreme Court for a writ of certiorari. The judgment in favor of the Oil Companies is therefore final. As of January 12, 2022, the United States has satisfied the judgment by paying the Oil Companies.

27. On June 21, 2022, pursuant to the 2014, 2018, and 2021 decisions of the Federal Circuit, the Oil Companies sent another letter to the GSA once again demanding reimbursement for costs that they have been required to pay since October 1, 2019, and that they reasonably expect to be required to pay in the future, pursuant to CERCLA, in connection with the McColl Site. The Oil Companies sought costs and interest incurred from October 1, 2019, through June 15, 2022, plus 2.5 percent simple interest accruing through the date of payment.

28. The GSA has not responded to this demand.

29. As the 2014, 2018, and 2021 Federal Circuit decisions make clear, there is no doubt that, pursuant to the Avgas Contracts, the United States is responsible for indemnifying the Oil Companies for 100 percent of the cleanup costs that they have incurred or will incur at the McColl

site, plus 2.5 percent interest under the CSA running until the date of payment. It is time for the Government to heed the Federal Circuit's admonition and "put an end" to its "continued resistance to making payments" that the Federal Circuit has "found it is obligated to make." *Id.*

### Damages Claimed in This Action

30. Because the remediation of the McColl Site remains ongoing, the Oil Companies have continued to incur costs remediating the Site since September 30, 2019, the end of the period addressed in this Court's *CFC 2020 Decision*. These costs were paid by the Oil Companies in accordance with the following allocation:

| Oil Company | Percentage of Costs and Interest |
|---|---|
| Shell | 58.58% |
| Union | 18.94% |
| Atlantic Richfield | 18.94% |
| Texaco | 3.54% |

<u>New Costs and Interest Incurred by the Oil Companies Since September 30, 2019</u>

31. Through September 20, 2022, those costs amount to $1,102,652.68 paid to C2 REM, the contractor charged with maintaining the remedy at the Site, and $59,400.00 to McAuley LCX Corp., the contractor that provides security at the Site.

32. Under the terms of the CSA, "[e]ach contracting agency shall allow and pay interest on the amount due and unpaid from time to time on any termination claim under a prime contract at the rate of 2 ½ per centum per annum for the period beginning thirty days after the date fixed for termination *and ending with the date of final payment*." 41 U.S.C. § 106(f) (emphasis added) (repealed).[2] Interest continues to run on the costs the Oil Companies incurred after September 30,

---

[2] Although Congress partially repealed the CSA in 2011, the repealer statute included a savings clause providing that "[t]he laws . . . are repealed, except for *rights and duties that matured*, penalties that were incurred, and proceedings that were begun before the date of enactment of this Act." Pub. L. No. 111-350, § 7(b), 124 Stat. 3677, 3855 (2011). This Court has held, and the

2019. This interest will continue to accrue until final payment is made on the costs incurred after September 30, 2019.

33.   In total, through September 20, 2022, the Oil Companies have incurred $1,162,052.68 in CERCLA costs at the McColl Site owed to them in accordance with the Avgas Contracts and the decisions of the Federal Circuit in *Shell I*, 751 F.3d at 1293, *Shell II*, 896 F.3d at 1314, and *Shell III*, 7 F.4th at 1167, plus 2.5 percent simple interest accruing through the date of payment pursuant to Section 6(f) of the CSA.

<u>Remediation Costs the Oil Companies Were Required to Pay to the State of California and the United States Pursuant to CERCLA</u>

34.   In the ongoing CERCLA litigation in the U.S. District Court for the Central District of California, the United States and California asserted that the Oil Companies are liable under CERCLA for the costs that the United States (through the Superfund) and California have incurred remediating the McColl Site, with statutory interest on these costs. *See* 42 U.S.C. § 9607(a)(4)(A). Following the entry of summary judgment in favor of the United States, *see United States v. Shell Oil Co.*, 506 F. Supp. 3d 1038, 1051 (C.D. Cal. 2020), *appeal docketed*, No. 21-55320 (9th Cir. Apr. 6, 2021) (oral argument has been scheduled for October 17, 2022), the Oil Companies have entered into partial consent decrees resolving the Oil Companies' allocable share of liability under CERCLA for certain of these costs.

35.   <u>First</u>, the Oil Companies have entered into a partial consent decree with California ("California Consent Decree"). California had claimed $4,286,682.66 in McColl Site response

---

Federal Circuit has affirmed, that "the government's duty to indemnify the Oil Companies and the Oil Companies' right to reimbursement for remediation costs under the Avgas Contracts both matured well before the repealer statute's enactment," and therefore that the CSA applies to the Oil Companies' claims notwithstanding the 2011 repeal. *Shell III*, 7 F.4th at 1176; *see also Shell Oil Co.*, 148 Fed. Cl. at 793–95.

costs for the period of October 1990 through September 30, 2019, and $4,568,496.70 in interest on those costs through December 31, 2019. The parties agreed to resolve California's CERCLA claim for a payment of $8,100,000.00.[3] California Consent Decree ¶¶ 10, 18. The parties expressly acknowledged that the amount paid by the Oil Companies is "less than the total amount of the State's Current Response Costs." *Id.* ¶ 19. The State nevertheless "agree[d] that in return for the Defendant Oil Companies' payment of the Settlement Amount set forth in paragraph 18 hereof, the scope of the State's release from liability and covenants as provided herein encompass all of the State's incurred response costs and accrued interest at or pertaining to the Site through the date of lodging of this Partial Consent Decree." *Id.* ¶¶ 17(k), 21. The District Court entered the California Consent Decree on April 4, 2022, and on June 15, 2022, the Oil Companies completed their payment of $8.1 million to California in satisfaction of this judgment.[4]

36. Under the Avgas Contracts and the decisions of the Federal Circuit in *Shell I*, 751 F.3d at 1293, *Shell II*, 896 F.3d at 1314, and *Shell III*, 7 F.4th at 1167, the United States must indemnify the Oil Companies for 100 percent of the $8,100,000.00 the Oil Companies have paid to California under the California Consent Decree. The Oil Companies are also entitled to statutory interest on these costs accruing through the date of final payment. *Shell III*, 7 F.4th at 1174–76. This interest will continue to accrue until final payment is made on the costs incurred in connection

---

[3] The California Consent Decree expressly reserves the Oil Companies' rights to assert the claims pleaded in this case. *See* California Consent Decree ¶ 29 ("Nothing in this Partial Consent Decree shall in any way limit or restrict the rights and obligations of the United States and the Oil Company Defendants or their successors with regards to any current or potential future claims the Oil Company Defendants have against the United States pursuant to contracts for the production of high octane aviation gasoline ('avgas') entered into between the United States and the Oil Company Defendants and their predecessors during the World War II era.").

[4] Atlantic Richfield paid its share ($1,534,140.00) of the California Consent Decree amount on April 20, 2022. Shell paid its share ($4,744,980.00) on April 26, 2022. Texaco paid its share ($286,740.00) and Union paid its share ($1,534,140.00) on June 15, 2022.

with the California Consent Decree. In total, through September 20, 2022, the Oil Companies have incurred $8,100,000.00 in McColl Site CERCLA costs paid to California that the United States must reimburse pursuant to the Avgas Contracts and the decisions of the Federal Circuit in *Shell I*, 751 F.3d at 1293, *Shell II*, 896 F.3d at 1314, and *Shell III*, 7 F.4th at 1167, plus 2.5 percent simple interest accruing through the date of payment pursuant to Section 6(f) of the CSA.

37.     <u>Second</u>, while Union, Atlantic Richfield, and Texaco have appealed the judgment favoring the United States, Shell has individually entered into a partial consent decree with the United States ("United States Consent Decree") requiring it to pay the United States $29,501,511.85 plus interest accruing through the date of final payment to resolve the United States' CERCLA claims for "Past Response Costs,"[5] and Shell agreed to pay "Future Response

---

[5] The United States Consent Decree defines "Past Response Costs" as "all costs, including but not limited to direct and indirect costs, that EPA has paid at or in connection with the Site from July 1, 1990, through July 31, 2018, and all costs, including but not limited to direct and indirect costs, that DOJ has paid on behalf of EPA at or in connection with the Site from October 1, 1990, through September 30, 2019, plus accrued Interest on all such costs through February 2, 2021; and Interest that accrued on amounts paid pursuant to the 1994 Consent Decree (Docket No. 270) from July 31, 1993, through September 30, 2019." United States Consent Decree ¶ 3.

Costs"[6] on a periodic basis upon receipt of bills from the EPA.[7] United States Consent Decree ¶ 8. These costs, too, were imposed "pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)." *Id.* ¶ I.A. Shell paid the United States $29,525,188.00 on December 3, 2021, in satisfaction of this judgment. Pursuant to the Avgas Contracts and the decisions of the Federal Circuit in *Shell I*, 751 F.3d at 1293, *Shell II*, 896 F.3d at 1314, and *Shell III*, 7 F.4th at 1167, the United States must indemnify Shell for 100 percent of the $29,525,188.00 Shell has paid to the United States under the United States Consent Decree. Shell is also entitled to statutory interest on such costs accruing through the date of final payment. *Shell III*, 7 F.4th at 1174–76. In total, through September 20, 2022, Shell has incurred $29,525,188.00 in McColl Site CERCLA costs paid to the United States that the United States must reimburse pursuant to the Avgas Contracts and the decisions of the Federal Circuit in *Shell*

---

[6] The United States Consent Decree defines "Future Response Costs" as "all costs, including, but not limited to, direct and indirect costs, that the United States incurs at or in connection with the McColl Superfund Site on or after July 31, 2018, in reviewing or developing deliverables submitted pursuant to the 1993 UAO, the 1996 UAO, or this Consent Decree; reviewing or verifying the Work, as that term is defined in the UAOs, conducted pursuant to the 1993 UAO or the 1996 UAO; conducting response activities pursuant to Section IX.B.4 of the 1993 UAO or Section XIV (EPA Review of Submissions) of the 1996 UAO as it relates to EPA's performance of all or part of the response action; performing periodic remedial action reviews under Section XI (EPA Periodic Review) of the 1996 UAO or Section 121 of CERCLA, 42 U.S.C. § 9621; or otherwise implementing, overseeing, or enforcing this Consent Decree against Settling Defendant, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, community involvement costs (including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e)), and all litigation costs. Future Response Costs shall also include all Interim Response Costs and Agency for Toxic Substances and Disease Registry (ATSDR) costs regarding the Site." United States Consent Decree ¶ 3.

[7] The United States Consent Decree expressly reserves Shell's right to assert the claims pleaded in this case, *see* United States Consent Decree ¶¶ 24, 25, including with respect to "liability for failure of the United States to indemnify [Shell] for all costs paid by [Shell] in connection with the Site, including but not limited to, all costs paid by the Settling Defendant pursuant to the Consent Decree," *id.* ¶ 25(a), and "liability for any claims of [Shell] against the United States that may be asserted in an action in the United States of Court of Federal Claims [sic] in the future seeking the recovery of any amounts paid by [Shell] in connection with the Site, including but not limited to amounts paid pursuant to this Consent Decree," *id.* ¶ 25(d).

*I*, 751 F.3d at 1293, *Shell II*, 896 F.3d at 1314, and *Shell III*, 7 F.4th at 1167, plus 2.5 percent simple interest accruing through the date of payment pursuant to Section 6(f) of the CSA.

Future Costs and Interest

38. The Oil Companies will continue to incur remediation costs at the McColl Site well into the future, including but not limited to, any amount Atlantic Richfield, Texaco, and Union may be found to owe after their pending appeal of the CERCLA judgment favoring the United States is fully adjudicated. Regardless of the amount, the United States must indemnify the Oil Companies for 100 percent of future remediation costs at the Site and pay the Oil Companies 2.5 percent simple interest from the time the costs are incurred through the date of final payment of those costs, in accordance with this Court's prior rulings.

\*   \*   \*

39. On June 21, 2022, the Oil Companies submitted a letter to GSA notifying it of their claims for post-September 30, 2019 costs and interest. The Oil Companies demanded findings on their claims pursuant to Section 13(a) of the CSA. 41 U.S.C. § 113(a). GSA has not responded to the Oil Companies' demand for indemnification.

40. The Oil Companies bring this suit pursuant to Section 13(c)(2) of the CSA, which permits a contractor to file suit "within one year after his demand" "in case of failure [by the contracting agency] to deliver such findings."

### COUNT I: BREACH OF CONTRACT

41. Plaintiffs re-allege and incorporate by reference Paragraphs 1–40.

42. Pursuant to Section 13(a) of the CSA and the decisions of the Federal Circuit in *Shell I*, 751 F.3d 1282, *Shell II*, 896 F.3d 1299, and *Shell III*, 7 F.4th 1165, the United States must

15

indemnify the Oil Companies for 100 percent of the remediation costs that they have incurred at the McColl Site, plus 2.5 percent simple interest running until the date of payment.

43. The Oil Companies have continued to incur remediation costs at the McColl Site since September 30, 2019, and interest has continued to accrue on those costs due to the United States' failure to pay them.

44. The Oil Companies will continue to incur remediation costs at the McColl Site well into the future, including but not limited to, any amount Atlantic Richfield, Texaco, and Union may be found to owe after their pending appeal of the CERCLA judgment favoring the United States is fully adjudicated. Regardless of the amount, the United States must indemnify the Oil Companies for 100 percent of the future remediation costs at the Site and pay the Oil Companies 2.5 percent simple interest from the time the costs are incurred through the date of final payment of those costs.

45. Pursuant to the California Consent Decree and Section 107 of CERCLA, the Oil Companies have been required to reimburse the State of California for certain costs that California has incurred remediating the McColl Site.

46. Pursuant to the United States Consent Decree and Section 107 of CERCLA, Shell has been required to reimburse the United States for certain costs that the United States has incurred remediating the McColl Site.

47. The United States, through the DSC's successor-in-interest, the GSA, has failed to honor its indemnification obligations to the Oil Companies.

48. The United States' failure to indemnify the Oil Companies for such costs and interest materially breaches the Avgas Contracts, and the Oil Companies are entitled to recover in damages all remediation costs and interest that they claim from the United States.

49. The Oil Companies are therefore entitled to reimbursement of remediation costs they incurred at the McColl Site and the costs incurred by the State of California that the Oil Companies were required to reimburse pursuant to the California Consent Decree plus 2.5 percent simple interest accruing through the date of payment, in accordance with the Avgas Contracts, Section 6(f) of the CSA, and the decisions of the Federal Circuit in *Shell I*, 751 F.3d 1282, *Shell II*, 896 F.3d 1299, and *Shell III*, 7 F.4th 1165.

50. Shell is individually entitled to reimbursement of the costs that Shell has paid to the United States pursuant to the United States Consent Decree plus 2.5 percent simple interest accruing through the date of payment.

## **PRAYER FOR RELIEF**

51. WHEREFORE, the Oil Companies respectfully request that this Court enter judgment:

    a. Awarding the Oil Companies damages in the amount of at least $9,262,052.68, plus any additional remediation costs that the Oil Companies incur because of the McColl Site between September 21, 2022, and the entry of judgment in this action, plus 2.5 percent simple interest accruing through the date of payment. The judgment should be entered in at least the following amounts (plus 2.5 percent simple interest accruing through the date of payment):

| | | |
|---|---|---|
| i. | Shell (58.58 percent): | $5,425,710.46 |
| ii. | Union (18.94 percent): | $1,754,232.78 |
| iii. | Atlantic Richfield (18.94 percent): | $1,754,232.78 |
| iv. | Texaco (3.54 percent): | $327,876.67 |

  b. Awarding Shell damages in the amount of at least $29,525,188.00, plus 2.5 percent simple interest accruing through the date of payment;

  c. Reaffirming the United States' liability for 100 percent of the remediation costs incurred by the Oil Companies because of the McColl Site, plus 2.5 percent simple interest accruing through the date of payment;

  d. Awarding the Oil Companies their costs, interest, and attorneys' fees as allowed by law;

  e. Ordering such other relief as this Court may deem just and proper.

October 3, 2022

*Of counsel*:
Vincent J. Colatriano
J. Joel Alicea
Nicholas A. Varone
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)

Respectfully submitted,

/s/ Michael W. Kirk
Michael W. Kirk
*Counsel of Record*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
mkirk@cooperkirk.com